CUTRER, Judge.
Robert Metrailer sued Cameron Cable & Cordage, Inc. (CCCI), his employer, for past due wages, penalties and attorney’s fees pursuant to LSA-R.S. 23:631 and 632.[1] The *978 trial court rendered judgment in favor of plaintiff for past due wages and attorney’s fees but denied penalty wages. CCCI has appealed the judgment in favor of plaintiff and plaintiff has answered that appeal seeking penalty wages. We amend and affirm as amended.
ISSUES
Two issues are presented by this appeal. The defendant challenges the award of wages and attorney’s fees made by the trial court. This challenge is based upon an alleged improper expansion of pleadings by plaintiff at trial. Plaintiff has answered CCCI’s appeal and raises the additional question of whether the trial judge’s denial of penalty wages was appropriate.
WAS THERE AN IMPROPER EXPANSION OF THE PLEADINGS?
The plaintiff was employed by CCCI on January 15, 1981, at a salary of $3,000.00 per month plus expenses. The employment continued until November 30, 1981, at which time plaintiff was discharged. Upon discharge plaintiff demanded wages for the last half of October and all of November. CCCI refused the demand and plaintiff brought suit alleging that CCCI owed him wages for the last half of October and all of November 1981.
To prove that wages were due for this period the plaintiff sought to introduce into evidence all of the payroll checks he received from CCCI during the ten and one-half months of his employment. The defendant corporation, CCCI, objected to the introduction of any evidence concerning the payment or non-payment of wages in months other than October and November 1981, the months specified in plaintiff’s petition. CCCI argued that any evidence concerning months other than those mentioned in plaintiff’s petition amounted to an improper expansion of plaintiff’s pleading. The trial judge overruled CCCI’s objection. CCCI now maintains the plaintiff’s failure to amend his pleadings to conform to his “expansion” is an error which requires this court to ignore the objected to evidence and find that the plaintiff has failed to carry his burden of proof in this case. We disagree.
LSA-R.S. 23:631 provides in part: “... upon the discharge ... of any ... employee ..., it shall be the duty of the person employing such ... employee to pay the amount then due under the terms of employment, ... not later than three days following the date of discharge.” (Emphasis added.) This statute places a specific, positive burden on an employer to pay, within three days, any wages due to a discharged employee under the terms of the discharged employee’s employment.
In the instant case ■ CCCI, without making any attempt to check its records, denied it owed plaintiff any wages as of November 30, 1981. Plaintiff was, therefore, forced to file suit to collect the alleged past due wages. To prove wages were past due, within the terms of plaintiff’s employment, plaintiff introduced testimony detailing the terms of his employment with defendant and copies of defendant’s own records covering plaintiff’s entire employment record. CCCI cannot now complain that plaintiff has used the very records, that CCCI was under a statutory duty to consult, in proving that wages were, in fact, past due.
The record reveals that plaintiff was hired by defendant at a salary of $3,000.00 per month beginning January 15, 1981. Plaintiff was to be paid $3,000.00 on the first of each month, representing payment for the preceding half month and the following half month. Copies of defendant’s payroll checks issued to plaintiff indicate this procedure was followed during the first five months of plaintiff’s employment. Plaintiff’s salary for the sixth month of his tenure with defendant was paid almost one month early. However, beginning in the *979 last half of July, defendant’s payroll became irregular and on two occasions plaintiff was issued checks which represented only one-half of a month’s salary rather than the full monthly salary of $3,000.00. During this period of irregular payments, delinquent wages began to accrue. By the time of plaintiff’s discharge, November 30, 1981, the delinquent wages totaled $4,500.00, or one and one-half month’s wages.
According to defendant’s own records, as of November 30th, plaintiff had received $27,000.00 in total salary payments from the defendant for the ten and one-half months he had worked. Simple mathematics shows that, under plaintiff’s terms of employment, $3,000.00 per month, plaintiff should have been paid a total of $31,500.00 for ten and one-half months work. The difference between the amount due plaintiff under the terms of his employment, $31,500.00, and the amount defendant actually paid plaintiff, $27,000.00, equals $4,500.00, which, at $3,000.00 per month, figures to be one and one-half months ar-rearages. The last month and one-half of plaintiff’s employment with defendant covered November and the second half of October. This is the time period specified in plaintiff’s petition. This is also the wages owed under the terms of the employment.
The trial court did not err in overruling defendant’s objection to plaintiff’s introduction of the evidence to prove the wages owed at the time of the termination of the employment. Plaintiff has carried his burden of proof under the statute and the trial judge’s award of $4,500.00 in past due wages and attorney’s fees shall be affirmed.[2]
WAS THE DENIAL OF PENALTY WAGES APPROPRIATE?
LSA-R.S. 23:632 is penal in nature and, axiomatically, must be strictly construed. However, this does not mean that penalty wages will be imposed in every case. There are “equitable defenses” which an employer may raise to avoid the imposition of penalty wages. The theory of “equitable defenses” in the context of 23:632 has been cited in many cases. However, for a proper understanding of this theory we look to a case from this circuit which defined “defenses” under these and similar circumstances. In Becker v. Choate, 204 So.2d 680, 683-684 (La.App. 3rd Cir.1967), [application not considered, not timely filed], writ den., 251 La. 751, 206 So.2d 96 (1968), this court said:
“While cases on this point generally state that R.S. 23:632 is subject to ‘equitable defenses’, we are of the opinion that the word ‘defenses’ does not mean a ‘defense’ in the strict sense of the word. Rather, the tenor of these cases seems to indicate that the court will refuse to assess penalties and attorneys’ fees where the facts of the particular case strongly indicate that greater justice will be attained by such refusal. These facts then become equitable considerations, or ‘defenses’ in a loose sense of the word, which will move the court to deny the penalties.”
*980 In the instant case the trial judge found that an “equitable defense” existed. The judge below correctly pointed out that a business corporation cannot hide behind poor bookkeeping procedures as justification for not making the timely payment of wages required by R.S. 23:631. Then the trial judge went on to find that, in this case, an equitable defense was presented because:
“[T]he present owner of the corporation [Wagner] was a half-owner [sic, should be two-thirds] during most of plaintiff’s employment period. During that time, the other [one-third] owner was the brother-in-law of the plaintiff and the bookkeeper was plaintiff’s sister-in-law. After the present owner consolidated the whole of the business he also inherited its financial problems, many of which he was unaware. Considering that the ‘management’ of the business at the time of this demand was in no better position than the plaintiff in determining the validity of the claim for unpaid wages, the denial was not arbitrarily made."
The trial court seems to indicate that, because these arrearages accrued at a time when plaintiff’s relatives were involved in the defendant corporation’s business, and prior to the time Wagner assumed the management of the defendant corporation, the “management” of the corporation, i.e., Wagner, had an equitable defense. Whether Wagner, personally, had an equitable defense was not before the court. CCCI was plaintiff’s employer. The question before the court was whether the corporate entity, CCCI, had an equitable defense. We conclude that the trial court erred in disallowing penalties.
In the recent case of Powell v. Flotation Services, Inc., 413 So.2d 276 (La.App. 3rd Cir.1982), writ den., 415 So.2d 941 (La.1982), this court said:
“In order for an employer to be liable for penalty wages, the employer must have been motivated by bad faith or must be found to have acted in an arbitrary or unreasonable manner. It is only a ‘good faith non-arbitrary defense to liability for unpaid wages; i.e., a reasonable basis for resisting liability’ which will permit the courts to excuse the employer from the imposition of penalty wages.” (Citations omitted.)
We conclude that CCCI has not presented a reasonable basis for its refusal to pay plaintiff’s wages.
The essence of a corporation is its ability to carry on despite changes in stock ownership. There is no evidence to indicate that anyone at CCCI made any attempt to determine the validity of plaintiff’s claim for unpaid wages after demand was made. CCCI had ample time, after demand, to ascertain whether wages were due. The demand letter to CCCI was dated December 17,1981, and suit was not filed until February 1, 1982. A simple inspection of the corporate books, and consideration of the plaintiff’s tenure with CCCI, would have alerted even the least sophisticated business that wages were due.
“When the failure to pay wages due according to the statute is attributable to neglect or improper pay procedure of an employer, the equitable defense enunciated by the Becker case is not available to an employer.”
McCaskill v. Deviney Construction Company, 323 So.2d 178, 181 (La.App. 3rd Cir. 1975), writs den., 325 So.2d 615 (La.1976).
In the case at hand, there exists a neglect by the supervisory personnel of CCCI to ascertain the existence of wages due as demanded. Such failure of CCCI to timely pay plaintiff’s past due wages as provided by R.S. 23:631 subjects the corporation to the penalty wages provision of R.S. 23:632. The judgment of the trial court will be amended accordingly.
For the reasons assigned, the judgment of the trial court is amended to add penalty wages in the amount of $9,000.00, that being 90 days wages. The remainder of the trial court judgment is affirmed.[3] The costs of this appeal are assessed to defend *981 ant-appellant, Cameron Cable & Cordage, Inc.
AMENDED AND AFFIRMED AS AMENDED.

. LSA-R.S. 23:631 provides:
“A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee’s or laborer’s current address as shown in the employer’s record. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section.
C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section.”
LSA-R.S. 23:632 provides:
“Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the la *978 borer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.”

. Defendant’s counsel conceded at trial that plaintiffs exhibit P-4 included all payroll checks issued by defendant to plaintiff between February 1, 1981, and October 26, 1981. One other check, in the amount of $1,800.00 written by defendant to plaintiff on November 23,1981, was offered by defendant at trial as being, in part, a salary payment to plaintiff. There was considerable conflict in the testimony concerning the characterization of this $1,800.00 check. Plaintiff contended that the $1,800.00 was part payment for $2,316.77 for expenses he had incurred. Defendant, through Don Wagner, contended the check represented $1,500.00 in salary and $300.00 in expense reimbursement.
At trial plaintiff produced detailed expense reports which showed that, as of November 23, 1981, defendant owed plaintiff $2,316.77 in expense reimbursements. Plaintiff also introduced a check from Don Wagner to plaintiff dated December 3, 1981, in the amount of $516.77; Wagner acknowledged this check was for expense reimbursement. The trial court apparently accepted plaintiffs explanation of the characterization of the $1,800 as being only for expense reimbursement. We find no error in this finding and note defendant has not challenged this finding on appeal.

. Plaintiff makes no request in his answer for additional attorney’s fees for this appeal.